IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURT T. PRESSLER ET AL.,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICAN HOME MORTGAGE SERVICING INC. ET AL.,<br><br>    Defendants.                    / | No. CV 11-6400 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

    Kurt and Denise Pressler's house suffered extensive fire damage in February 2007. The property was covered by a fire insurance policy, and the Presslers decided to use the policy proceeds to rebuild the home, which was their primary residence. This litigation stems from the Presslers' frustrations with their lender American Home Mortgage Servicing, Inc.'s ("Lender") erratic release of the insurance money for that purpose over the ensuing months and years, culminating in the Presslers' default on their mortgage in November 2009 and Lender's eventual refusal to release the remaining funds.

    Though Lender had no obligation to release additional funds once the Presslers' defaulted, the record does not yet support summary judgment for Lender regarding its pre-default performance of its contractual obligations, and so the Court will GRANT IN PART and DENY IN PART Lender's Motion for Summary Judgment in order to permit further development of the record as to the pre-default time period.

## I. BACKGROUND

The parties have stipulated to many of the relevant facts. In June 2006, the Presslers borrowed $700,000 from Lender to purchase a home in Bethel Island, California, under terms set out in a promissory note (the "Note"). Stip. Facts (dkt. 27-2), Ex. B. The loan was secured by a deed of trust on the property (the "Deed"). Id. Ex. A. The Deed states in relevant part:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. . . .
>
> If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiation and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument . . . . Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Deed, Stip. Facts Ex. A ¶ 5.

The Presslers had a fire insurance policy on the home, provided by Allstate, see Stip. Facts ¶ 3, Ex. C, and the home suffered extensive fire damage in February 2007. Id. Ex. F at 2. In July 2008–about a year and a half later–Lender[1] received a check from Allstate for

---

[1] The lender named in the Note and Deed is "American Brokers Conduit," while the Presslers sued "American Home Mortgage Servicing Inc." The entity "Homeward Residential Inc." has been defending this lawsuit, and has represented that it was formerly named "American Home Mortgage Servicing Inc." The Presslers argue offhandedly in their opposition that Homeward has "not offered any evidentiary foundation for being the servicer for this particular lender," but its appearance in this lawsuit with access to all of the relevant records satisfies the Court on that point.

2

$356,420.10. Lender and the Presslers agreed that the money would be used for reconstruction. Pressler Decl. (dkt. 22-1) ¶ 5. Lender then disbursed some of the Allstate money to the Presslers in installments as the Presslers worked on reconstruction. Stip. Facts ¶ 4.

Construction stalled, the Presslers defaulted, id. ¶ 7, and Lender ultimately refused to continue releasing money for various reasons discussed in more detail below. At that time Lender intentionally retained $34,736.17 of the original check from Allstate, leaving Lender in possession of a total of $49,628.87–having disbursed or endorsed over to the Presslers around $390,000. Id. ¶ 6. In addition, the Presslers say that they spent at least $60,000 out of their own pocket in the rebuilding effort in reliance on Lender's representations that it would cooperate with the rebuilding plan, see Pressler Decl. (dkt. 22-1) ¶¶ 15, 18.

The Presslers sued in state court on November 18, 2011, Notice of Removal (dkt. 1) Ex. A, alleging three causes of action: (1) bad faith refusal to timely disburse insurance funds; (2) breach of agreement to allow rebuilding and repair and for accounting and restitution; and (3) accounting and declaratory relief. Lender removed the case in December 2011 based upon diversity jurisdiction, and then moved for summary judgment or summary adjudication of all claims on the basis that it disbursed the subject fire-insurance proceeds in a timely and legal manner. After reviewing the briefing on that motion, the Court instructed the parties to generate a set of stipulated undisputed facts to aid in resolving the motion. After doing so, Lender again moves for summary judgment or summary adjudication based on the stipulated facts.

**II.     LEGAL STANDARD**

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The movant is not

1  required to produce evidence negating the non-movant's claims. Lujan v. Nat'l Wildlife
2  Fed'n, 497 U.S. 871, 885 (1990) ("[T]he purpose of Rule 56 is to enable a party who believes
3  there is no genuine dispute as to a specific fact essential to the other side's case to demand at
4  least one sworn averment of that fact before the lengthy process of litigation continues"). If
5  the movant carries its burden, the burden shifts to the nonmoving party to establish facts
6  beyond the pleadings showing that a triable issue of disputed material fact remains so that
7  summary judgment is not appropriate. Celotex, 477 U.S. at 324; Adickes, 398 U.S. at 157.

8  To successfully rebut a properly supported summary judgment motion, the non-moving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [nonmoving party's] favor, could convince a reasonable jury to find for [that party]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party may not rest on conclusory allegations or mere assertions. Rather, it must present significant probative evidence of specific facts raising a material issue that "can be resolved only by a finder of fact because [the issue] may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 249-50, 256.

**III. DISCUSSION**

**A. The Presslers' Proffered Theories**

The Presslers primarily press two theories in their briefing, neither of which rests on evidentiary support sufficient to avoid summary judgment. The Presslers, relying exclusively on the language in a January 2011 letter Lender sent to the Presslers, argue that Lender unilaterally settled the fire insurance claim with Allstate for $78,744.74 on top of the approximately $390,000 Allstate had already released for the rebuilding, which would be a breach of the Deed. See January 2011 Letter, Morrison Decl. (dkt. 27-3) Ex. Q.

4

At first blush, the theory is plausible, because the January 2011 letter reads: "An insurance claim settlement, in the amount of $78,744.74, was reached for the damages sustained on the above-reference property. The current unclaimed settlement amount in the possession of [Lender] is $29,784.32" The letter goes on to encourage the Presslers to submit requests for reimbursement of reconstruction costs from the unclaimed money. The Presslers say the letter speaks for itself, and admits to a unilateral settlement that the Presslers imply they never would have agreed to because it was too low.

But Lender offers a declaration from its custodian of records explaining that Lender never received any additional money; that the amount of $78,744.74 is <u>exactly</u> the sum of two other checks documented in the record; that those two sums were internally accounted for differently because of the odd manner in which they came into Lender's possession;[2] and that the computer-generated letter filled in that sum automatically. Morrison Decl. ¶ 3.

It cannot be a mere coincidence that the $78,744.74 figure is <u>exactly</u> the sum of two checks in the record that were both handled differently than the other checks. Lender does not explain why the letter refers to a settlement, but it makes sense that a form letter informing a borrower of unclaimed insurance proceeds would refer to a settlement. The Presslers' insistent speculation that a secret settlement was reached and that Lender's custodian of records is lying is not sufficient to create a genuine issue of material fact.

The Presslers' other theory of breach is that the contract required a written agreement in all situations where insurance proceeds were applied to the outstanding loan balance, and that Lender applied the proceeds to the balance without such an agreement. That interpretation cannot be squared of the relevant contract language, which says:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, <u>if the restoration or repair is economically feasible and Lender's security is not lessened</u>.

---

[2] Both were received by Lender from the Presslers rather than from Allstate directly: the Presslers forwarded Lender an August 2008 check for $63,852.58, which Lender then endorsed over to the Presslers, <u>see</u> Stip. Facts ¶ 5, and in June 2010 the Presslers returned a May 2010 check from Lender for $14,892.16, <u>id.</u> ¶ 11.

5

Deed ¶ 5 (emphasis added).

The Presslers' reading ignores the underlined portion, which permits Lender to withhold funds without mutual written agreement where the repair is infeasible or where release would impair Lender's security. And, if there were any doubt, the contract expressly says as much later in the same section: "If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument." Id. Nor, contrary to the Presslers' suggestion, can any of that contract language be plausibly interpreted as a requirement for a written agreement that repair had become infeasible or that the lender's security would be lessened.

The Court accordingly GRANTS Lender's motion for summary judgment on the Presslers' theory that Lender breached by unilaterally settling with Allstate, as well as their theory that Lender breached by applying the insurance money to the loan balance without a written agreement.

### A. Post-Default Claims Amenable to Summary Judgment

Once the Presslers defaulted, Lender was under no obligation to release additional funds. See Ford v. Mfrs. Hanover Mortg. Corp., 831 F.2d 1520, 1524 (9th Cir. 1987); Cal. Fair Plan v. Boktor, No. B160299, 2003 WL 22883998, at *3 (Cal. Ct. App. 2003) (unpublished). The Presslers offer no argument or authority to the contrary in their opposition brief. The stipulated facts concede that the Presslers defaulted in November 2009. Stip. Facts ¶ 17. Accordingly, to the extent the Presslers argue that Lender had some obligation to release additional funds after their November 2009 default, the Court GRANTS Lender's motion for summary judgment.

### B. Diversion of Insurance Money Not Grounds for Summary Judgment

Lender says the Presslers claims should cut off even earlier; specifically, it argues that any claims arising after July 2008 should be foreclosed because the Presslers diverted at least $87,500 of Lender's July 2008 disbursement of fire insurance proceeds to pay off a junior loan on the property. The Presslers concede that they used that insurance money to pay off

6

the junior loan, see Stip. Fact. Ex. E-3, but they also say that they sought permission from Lender before diverting that money, and that a representative of Lender (Jared Larkin) expressly approved the request. Id. According to the Presslers, Lender agreed that paying the junior loan was a good idea because defaulting on the junior loan would constitute a default on Lender's loan, and there was reason to believe that the Presslers could later draw the money back out since the junior loan was a home equity line of credit. See id.

Lender's briefing does not address the Presslers' waiver argument and evidence at all. Lender's motion for summary judgment as to claims arising after payment of the junior loan but before default is therefore DENIED.

### C. Pre-Default Claims Not Yet Amenable to Summary Judgment

The record is far less clear as to Lender's performance of its contractual obligations prior to the Presslers' default. For example, the Deed states that "[d]uring [the] repair and restoration period, Lender shall have the right to hold [the] insurance proceeds until Lender has had an opportunity to inspect [the] Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Deed ¶ 5 (emphasis added). The Presslers' February 26, 2009 letter to Lender stated that "construction has ceased due to lack of funds," that "it would be clear to anyone reviewing this situation that the house is being rebuilt and will be completed," and that "[w]e have about six months' worth of work to get there." Stip. Facts Ex. E-3.

Yet, Lender did not release another payment to the Presslers until July 7, 2009–a full four months later. Because the record has not been developed, it is unclear whether Lender conducted any inspections in the interim, or whether Lender has another explanation for the delay. Kurt Presslers' declaration suggests that Lender did nothing at all during the gap. Pressler Decl. (dkt. 22-1) ¶¶ 16-17. At the hearing on this motion, the Court inquired of the parties about evidence of inspections, and Lender referred to its October 2011 letter stating that inspections took place in October 2009 and May 2010, see Stip. Facts Ex. O–neither of which unambiguously satisfies a requirement of "prompt" inspection in response to the Presslers' February 2009 letter.

7

Also, the record does not yet foreclose a showing that Lender violated the implied covenant of good faith and fair dealing in the pre-default period by imposing unreasonable conditions on the Presslers' receipt of funds and by otherwise obstructing progress on the rebuilding effort. Under the contract, the Presslers were entitled to have the proceeds applied to their rebuilding efforts, see Deed ¶ 5, and some evidence in the record suggests Lender impeded that effort.

For example, Lender told the Presslers that they had to front 33% of the costs–a condition found nowhere in the Deed–and though such an arrangement could be reasonable depending on the parties' understandings and negotiations, nothing in the current record explains why it was here. See Pressler Decl. (dkt. 22-1) ¶ 4. Then, as discussed above, after two years of a generally productive partnership to rebuild the house, Lender fell silent for four months after construction had ceased. Then, Lender conditioned its continuation of the funding on a new "pay as you go" scheme, which, like the 33% out of pocket condition, was not in the Deed. Without further record development and argument, the Court has only the Presslers' shading of this "pay as you go" plan as a one-sided and unreasonable commercial arrangement, which–combined with Lender's apparent delay and other unilaterally imposed condition–a jury could find was a violation of the implied covenant.

Accordingly, the Court DENIES Lender's motion for summary judgment as it relates to claims premised on breaches of the contract and the implied covenant of good faith and fair dealing prior to the Presslers' default, without prejudice to Lender's ability to bring another motion for summary judgment concerning that period once the record is more fully developed.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Lender's Motion for Summary Judgment as it relates to Lender's post-default conduct, including the Presslers' theories concerning unilateral settlement and the requirement of a written agreement to apply insurance proceeds to the loan balance. The Court DENIES Lender's motion as it relates to Lender's pre-default conduct. The parties have ninety days to conduct relevant discovery,

and any further motions for summary judgment must be filed no later than Friday, July 12, 2013, at 5:00 p.m.

**IT IS SO ORDERED.**

Dated: March 29, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE